# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:  )
        )    **JUDGE RICHARD L. SPEER**
Christopher and Lisa Speith  )
        )    Case No. 09-36607
Debtor(s)  )
        )
        )

## DECISION AND ORDER

This cause comes before the Court after a Hearing on the Motion of the United States Trustee to Dismiss Case for Abuse Pursuant to 11 U.S.C. § 707(b)(1) and § 707(b)(3). At the conclusion of the Hearing, the Court took the matter under advisement so as to afford time to further consider the arguments raised by the Parties. The Court has now had this opportunity, and finds, for the reasons set forth herein, that the Motion of the United States Trustee should be Granted.

## DISCUSSION

Before this Court is the Motion of the United States Trustee ("UST") to Dismiss. Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). As core proceedings, this Court has been conferred with the jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

On September 24, 2009, the Debtors, Christopher and Lisa Speith, filed a petition in this Court for relief under Chapter 7 of the Untied States Bankruptcy Code. By filing a petition for relief under Chapter 7 of the Code, the Debtors are seeking "an immediate unconditional discharge of personal liabilities for debts in exchange for the liquidation of all non-exempt assets." *Schultz v. U.S.*, 529 F.3d 343, 346 (6th Cir. 2008). This is in contrast to a bankruptcy brought by an individual

In re: Christopher and Lisa Speith
Case No. 09-36607

under Chapter 11 or 13 of the Code through which debtors, based on a plan subject to approval by the court, propose to repay all or a portion of their debts from their assets or future earnings over a period of time, with a discharge then being entered upon the debtor's successful completion of the plan.

Bankruptcy, however, is a legislatively created benefit, not a constitutional right. *United States v. Kras*, 409 U.S. 434, 445-446, 93 S.Ct. 631, 637-638, 34 L.Ed.2d 626 (1973). Therefore, no matter the Chapter of the Code, Congress may place reasonable restrictions on an individual's ability to obtain bankruptcy relief. To that end, Congress has prescribed conditions under which a debtor's bankruptcy case must be dismissed. *In re AC Rentals, Inc.*, 325 B.R. 339 (10th Cir. B.A.P. 2005). When, as here, a debtor seeks relief under Chapter 7 of the Bankruptcy Code, the conditions mandating dismissal are set forth in § 707, with the Motion to Dismiss filed by UST relying on the conditions set forth in subsection (b).

Section 707(b)(1) provides that the bankruptcy case of an individual debtor whose debts are primarily consumer debts may be dismissed if the court finds, after notice and a hearing, that granting a discharge would be an abuse of the provisions of Chapter 7 of the Bankruptcy Code. Two methods are then prescribed in § 707(b) to assess whether "abuse" is present: (1) presumed abuse under the objective 'means test' set forth in § 707(b)(2); and (2) a subjective test found in § 707(b)(3) which considers whether the debtor filed their petition in bad faith and whether the totality of the circumstances surrounding the debtor's financial situation demonstrate abuse.

For its Motion to Dismiss, the UST relies solely on the subjective test provided in § 707(b)(3). Particularly, the UST contends in its Motion that the Debtors' bankruptcy case should be dismissed based upon the totality of the circumstances because "the debtors have the ability to repay their creditors." (Doc. No. 12).

Page 2

In re: Christopher and Lisa Speith
Case No. 09-36607

Consistent with the position advocated by the UST, a debtor's ability to repay their unsecured debts has developed to become a prime, and often dispositive consideration when determining whether, under the 'totality of the circumstances' standard of § 707(b)(3)(B), a case should be dismissed for abuse. *In re Brenneman*, 397 B.R. 866, 870-71 (Bankr. N.D.Ohio 2008). As observed by the Sixth Circuit Court of Appeals: dismissal for "abuse is intended to uphold creditors' interests in obtaining repayment where such repayment would not be a burden." *In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989) (internal quotations omitted), *citing In re Kelly*, 841 F.2d 908, 914 (9th Cir. 1988).

A debtor's ability to repay their debts is normally ascertained by reference to the amount of "disposable income" the debtor has available, and whether that income could adequately fund a Chapter 13 plan. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 435 (6th Cir. 2004). For purposes of bankruptcy law, the term "disposable income" is defined, generally, as that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. *Id., citing* 11 U.S.C. § 1325(b)(2).

In this matter, the budgetary figures submitted by the Debtors in this matter show a "disposable income" of just $75.57 per month. In arriving at this figure, the Debtors represented that they have a gross monthly income of $7,452.97; that after mandatory deductions they have $5,765.24 in net monthly income; and that to support themselves and their four minor children, they have $5,689.67 in necessary, monthly expenses. Against this income, the Debtors represented that they have $45,047.18 in unsecured debt, thus, in their estimation, providing them with very little ability to repay their debts. However, as now explained, the Court disagrees, finding the UST's assessment, that the Debtors have the ability to repay their debts, to be more accurate.

The assessment as to the amount of "disposable income" available to a debtor is made exclusively by the Court, and is thus not dependent on the financial figures put forth by the debtor or any other party. *In re Gonzalez*, 378 B.R. 168, 173 (Bankr. N.D.Ohio 2007). Rather, in its role as

Page 3

In re: Christopher and Lisa Speith
Case No. 09-36607

the trier of fact, the Court is under a duty to scrutinize a debtor's expenses, and make downward adjustments where necessary, so as to ensure that the debtor's expenses are reasonable. Similarly, when determining a debtor's "disposable income," a court may impute income to the debtor when it would be equitable to do so – *e.g.*, when the debtor is voluntarily underemployed. *In re Felske*, 385 B.R. 649, 655 (Bankr. N.D.Ohio 2008). For this purpose, and although the Court is reminded that adjustments made to a debtor's budget should allow room for contingencies, such as that for unforseen expenses for car repairs, the circumstances surrounding the Debtors' particular budget shows ample room for maneuver.

The budgetary figures presented in this matter show that Mr. Speith allocates $328.84 from the Debtors' monthly budget for the repayment of a loan incurred against his 401(k) account. However, when computing a debtor's "disposable income" this Court has not, in the absence of exigent circumstances such as bad health and/or impending retirement, permitted debtors to expense against their income payments made to retirement accounts, including allocations made for the repayment of loans taken against retirement accounts. *In re Brenneman*, 397 B.R. 866, 874 (Bankr. N.D.Ohio 2008). The reason:

> Loan repayments to retirement accounts are considered 'disposable income' because of their unique character; the debtor is, in essence, repaying a loan to himself. Thus, . . . it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend.

*In re Gonzalez*, 378 B.R. 168, 174 (Bankr. N.D.Ohio 2007) (internal citation and quotation omitted).

At the Hearing held in this matter, the Debtors offered no basis for the necessity of Mr. Speith's 401(k) loan expense; nor is any reason apparent. For example, the Debtors are still relatively young and from all appearances in good health. A couple of points here are in order.

Page 4

In re: Christopher and Lisa Speith
Case No. 09-36607

The Debtors intimated that Mr. Speith's monthly payment toward his 401(k) loan should be allowed as a necessary expense because the failure to repay the loan will potentially result in an adverse tax consequence and could have an effect on his employment. On these points it is true that, under the Internal Revenue Code, 26 U.S.C. § 72(p), the failure of a taxpayer to timely repay a loan taken against a qualified retirement account, such as a 401(k), results in a taxable distribution; it may also subject the transaction to a penalty based upon an early distribution. 26 U.S.C. § 72(q).

However, regarding any tax consequences, this Court has observed that, for purposes of a § 707(b) analysis, there is "no reason why the existence of a tax penalty should mitigate against abuse; a tax penalty is simply one of the inherent risks which one assumes when taking a loan against a 401(k) account." *In re Gonzalez*, 378 B.R. 168, 174 (Bankr. N.D.Ohio 2007) (quotation omitted).

There also exists no corroborating evidence which would tend to show that Mr. Speith's employment would be placed in jeopardy if his 401(k) loan were not repaid. This lack of evidence is consistent with the law's treatment of 401(k) accounts. For purposes of the Internal Revenue Code, a 401(k) retirement account is characterized as a 'defined contribution plan' with the sums contributed to the account by the employee immediately vesting in favor of the employee. 26 U.S.C. § 411(a)(1); Treas. Reg. §§ 1.411(a)-1(a)(2), 1.411(c)-1. This is to say that a 401(k) account is portable, with the employee entitled to the funds he contributes to the account at any time, including upon the employee's separation from the employer sponsoring the account. *See In re Lowe*, 252 B.R. 614, 623 (Bankr. W.D.N.Y. 2000). As such, if an employee fails to repay a loan taken against a 401(k) account, the financial interests of the employer sponsoring the account are not adversely effected. Accordingly, in the absence of corroborating evidence, the Court will not assume that an inability to repay a 401(k) loan will place a debtor's employment in jeopardy.

Other circumstances brought to the Court's attention also show that the stress on the Debtors' household budget is not as serious as that originally presented. First, the Debtors have, and will in

Page 5

In re: Christopher and Lisa Speith
Case No. 09-36607

the not too distant future realize some savings on their transportation expenses. Particularly, the Debtors in approximately one year will fully satisfy the loan on one of their automobiles.

But more importantly, the Debtors have over the previous few years overpaid their cumulative tax liabilities – federal, state, city etc . . . – by approximately $2,800.00, thus entitling the Debtors to a refund on the overpayments. The evidence presented in this case also shows that the Debtors are likely continuing to overpay their accruing tax liability. As a legal matter, this Court has consistently held that "tax refunds, although not available on a monthly basis, are a source of income for a debtor and so long as there is the realistic prospect of similar refunds in the future, tax refunds will be included in a determination of the Debtor's net income for purposes of § 707(b)." *In re Durczynski*, 405 B.R. 880, 885 (Bankr. N.D.Ohio 2009), *citing In re Blankenship*, 398 B.R. 457, 462 (Bankr. N.D.Ohio 2008). Accordingly, given the likelihood of the Debtors again receiving meaningful tax refunds, the availability of such funds in the future constitutes a financial resource which may be allocated to repay the Debtors' creditors.

The Court also cannot overlook that the Debtors in this matter have a gross annual income of $89,435.64, thus affording them an income slightly above the state median-income level for a like size family. At the time the Debtors sought bankruptcy relief, the median income level for a family of six in Ohio was $88,034.00.[1] For such debtors, enjoying an appreciable level of income, the changes implemented to the Bankruptcy Code by Congress in 2005 constituted a fundamental shift, making relief under Chapter 7 of the Code an avenue of last resort and not, as many debtors came to view Chapter 7, the presumed chapter of the Code under which bankruptcy relief should be obtained. As recently explained by the Sixth Circuit Court of Appeals in the case of *Schultz v. United States*:

---

[1] http://www.justice.gov/ust/eo/bapcpa/20090315/bci_data/median_income_table.htm.

Page 6

In re: Christopher and Lisa Speith
Case No. 09-36607

> In 2005, the landscape for bankruptcy filings dramatically changed. Responding to a growing belief that "bankruptcy relief may be too readily available and is sometimes used as a first resort, rather than a last resort," H.R. Rep. NO. 109-31(I), at 4 (2005), and the prevalence of "opportunistic personal filings and abuse," id. at 5, Congress enacted the BAPCPA in order to require above-median income debtors to make more funds available for the payment of unsecured creditors. As a result, higher-income debtors with the ability to repay a substantial portion of their debts without significant hardship are now required to do so by filing under Chapter 13 rather than Chapter 7.

529 F.3d 343, 347 (6th Cir. 2008).

Given these considerations, the Court finds that the Debtors have the financial means by which to make an effort to repay at least a portion of their unsecured debt. This finding is consistent with the statement made by Mr. Speith at the hearing held on Dismissal in which he represented that he would like to make an attempt to repay his debts. Therefore, consistent with Motion of the UST to Dismiss, it is the holding of this Court that, under the 'totality of the circumstances' test set forth in 11 U.S.C. § 707(b)(3)(B), granting relief to the Debtors would be an abuse for purposes of 11 U.S.C. § 707(b)(1).

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Page 7

In re: Christopher and Lisa Speith
Case No. 09-36607

Accordingly, it is

**ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Friday, January 8, 2010, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

**IT IS FURTHER ORDERED** that, subject to the Debtors' election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, GRANTED.

Dated: December 14, 2009

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 8

# CERTIFICATE OF SERVICE

Copies were mailed this 14th day of December, 2009 to:

Christopher M. Speith
6280 Monmouth Road
Van Wert, OH 45891

Lisa A. Speith
6280 Monmouth Road
Van Wert, OH 45891

Donald J. Johnson
113 N Washington
Van Wert, OH 45891

William L Swope
221 South Main St
Findlay, OH 45840

Dean Wyman
201 Superior Ave, #441
Cleveland, Oh 44114

                                              Diana Hernandez
                                      Deputy Clerk, U.S. Bankruptcy Court